# In the United States District Court
## for the
## Western District of Texas

UNITED STATES OF AMERICA     §
                             §
v.                           §     NO. SA-09-CR-203-XR
                             §
FERNANDO SILVA               §

## ORDER

On this date the Court considered Defendant's motion to suppress (Docket No. 18).

### A. Background

1. On April 26, 2003 and May 20, 2003, U.S. Customs Service conducted an Operation titled "FALCON" in which the Defendant was identified as being associated with the possible purchasing and accessing of suspected child pornography websites. The Defendant was not investigated at that time.

2. In April 2006, ICE Cyber Crimes Center (C-3), Child Exploitation Section (CES) initiated an investigation into a criminal organization operating a commercial child pornography website known as "Home Collection." The investigation revealed that the same organization is operating numerous commercial child pornography websites. In addition, the organization utilizes various Paypal accounts to process the payments for access to the

member restricted websites.

3.  The initial member restricted website was located at URL: [http://members.xxxxcollect.us](http://members.xxxxcollect.us) [redacted] and was known as "Home Collections." The organization offered individuals monthly access to a member restricted website for $79.95 or $99.95 a month. The member restricted website solicits customers via several different e-mail accounts. ICE/C3/CES has conducted over 60 undercover transactions at the advertising websites associated with this investigation, which provided access to approximately 23 different member restricted websites.

4.  Each one of the undercover purchases followed one of the below listed patterns:

21.1 Pattern One:

    i. The ICE agent accessed a specific advertising website.

    ii. The ICE agent was redirected to an "iWest" payment website and entered

        personally identifiable information, including credit card information. The "iWest" payment website identified a specific member restricted website

        through the use of the subject identifiers.[1]

    iii. After completing the required information and clicking submit,

---

[1] Subject identifiers are a group of PayPal accounts that are used to facilitate customer payments to specific child exploitation member restricted websites. Those specific child exploitation member restricted websites can be identified in the PayPal transactional logs by the subject identifiers utilized by this criminal organization. In this case, the subject identifier is "Video Shop CD1."

the

ICE agent was redirected to a second non-specified web page indicating the   payment currently being processed and to check for further information in   the e-mail account provided by the ICE agent.

iv. The ICE agent received e-mail containing payment completion instructions

which included a hyperlink to the PayPal account.

v. The ICE agent completed the transaction via the PayPal account.

vi. The ICE agent received access to the member restricted website from one   of the administrative e-mails associated with the criminal organization.

21.2 Pattern Two:

i. The ICE agent accessed a specific advertising website.

ii. The ICE agent was redirected to an "iWest" payment website and entered

personally identifiable information, including credit card information. The

"iWest" payment website identified a specific member restricted website

through the use of subject identifiers.

iii. After completing the required information and clicking submit, the ICE

agent was redirected to a second web page which also contained

a button      that the agent had to click to complete payment.

iv. The ICE agent clicked the button and was redirected to a secure

PayPal

payment web page.

v. The ICE agent received access to the member restricted website

from one

of the administrative e-mails associated with the criminal

organization.

5.    As indicated above, the criminal organization utilizes multiple PayPal

accounts to process payments for the monthly subscription fees to the

member restricted website. PayPal maintains transactional records for

each PayPal account. The transactional records indicated at least the

following items: date of purchase, time of purchase, name of customer,

subject identifier assigned by the owner of the PayPal account indicating

what the customer is purchasing, amount of purchase, customer's IP

address, customer's e-mail address, seller's e-mail address, and the Item

ID. In addition, PayPal also captures the customer's full billing address.

6.    On January 18, 2007, the defendant was identified as having purchased

access to "Home Collection/VideoShop CD1," a website known to contain

and distribute child pornography. The defendant purchased access to the

site using a credit card number traced to him, and by providing his name

and address to site operators. The investigating agents confirmed the

defendant's connection to the site by obtaining his PayPal and credit card records and information about his email address. They verified the defendant's use of the specific credit card, which was never reported stolen.

7.      On January 18, 2007, Webtrace Software revealed an individual identified as Fernando Silva made a payment to PayPal account number xxxx57932892027xxxx [redacted] for Video Shop CD1, ID 1159, in the amount of $99.95.

8.      In conducting more than 60 undercover transactions, ICE agents identified specific  subject identifiers and Item ID's that are associated with child exploitation member restricted websites. In conducting these undercover transactions, ICE agents identified specific subject identifiers and Item IDs[2] that are associated with child exploitation member restricted website known as "Video Shop CD1." ICE agents purchased access to this member restricted website on the following dates: February 12, 2007 and March 19, 2007. On this occasion, the transaction was either identified by the subject identifier Video Shop CD1 or Item 1159.

9.      On May 11, 2007, database queries on Accurint software indicated the defendant's address at 9306 xxxxx Storm [redacted], San Antonio, Texas. The Texas Department of Public Safety drivers records identified

---

[2] In addition to subject identifiers, the criminal organization also assigned specific Item IDs to each of the specific member restricted websites. In this case, "Video Shop CD1" was assigned Item Id 1159.

Fernando SILVA, DOB xx-xx-xxxx [redacted], as being registered at 9306 xxxxx Storm [redacted], San Antonio, Texas.

10. On May 18, 2007, a summons was prepared and served on Time Warner requesting subscriber information for Fernando SILVA. The information received revealed that the subscriber was Fernando SILVA. This account was activated on November 11, 2002. On April 22, 2008, information was received from Time Warner that Fernando SILVA still had an active account with them.

11. On August 23, 2007, a Federal Grand Jury Subpoena was prepared and served on Wells Fargo Bank Texas, N.A., the financial institution responsible for issuing the check/debit card (#xxxx74013491xxxx) [redacted] to checking account number xxx-xxxxxxx [redacted]. The Federal Grand Jury requested that Wells Fargo Bank provide statements for all transactions on the above mentioned check card account from January 2007 through August 23, 2007.

12. On May 5, 2008, the search warrant application and affidavit was presented to the Honorable Pamela Mathy. The Magistrate Judge reviewed the search warrant application and supporting affidavit and then issued the search warrant.

13. On May 6, 2008, the search warrant was executed at the defendant's home, and agents seized an E-machine T-5082; a hard drive WD400; hard drive WD800JB, a digital camera HP Photosmart 435; a digital camera (no brand); two thumb drives; 5 VHS-C video cassettes; numerous CD's; floppy

disks; and miscellaneous paperwork from the defendant's bedroom. A Dell computer GX-1 and a bag of disks was seized from Defendant's music room.

14. On March 18, 2009, an indictment was issued by the grand jury charging Defendant with possession of child pornography.

## B. Analysis

### Legal Standard

The United States Constitution provides that "no Warrants shall issue, but upon probable cause."[3] Despite having no clear definition, probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."[4] The issuing Magistrate Judge's task is:

> simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for... conclud[ing]' that probable cause existed.[5]

The absence of clear rules for evaluation of probable cause has been aptly explained by the United States Supreme Court when it stated "[p]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual

---

[3] U.S. CONST. Amend. IV.

[4] *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).

[5] *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

contexts-not readily, or even usefully, reduced to a neat set of legal rules."[6]

As further guidance, the Fifth Circuit has provided that probable cause must be found within a sworn, written affidavit, and "does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing."[7] Additionally, the "magistrate's determination is entitled to deference by reviewing courts."[8]

## Analysis of the Arguments

Generally, courts undertake a two-part review of a motion to suppress evidence.[9] The first inquiry is "whether the good-faith exception to the exclusionary rule applies."[10] If the exception applies, there is no need to undergo the second part of the analysis, which is a determination of "whether the magistrate had a substantial basis for finding probable cause."[11] **The Parties' Contentions**

Defendant, in his Motion to Suppress Evidence (Docket No. 18), argues the search warrants issued for the search of his residence lacked probable cause, and in the alternative, that the search warrant failed to particularly describe the

---

[6] *Id.* at 232.

[7] *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (citing *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991)).

[8] *Id.*; *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965).

[9] *Froman*, 355 F.3d at 888 (quoting *United States v. Cherna*, 185 F.3d 403, 407 (5th Cir. 1999)).

[10] *Id.*

[11] *Id.*

place to be searched or the things to be seized.[12]

Defendant contends that the search warrant lacked probable cause because the information relied upon was stale.[13] Defendant argues that more than a year had passed between the date of the only alleged activity and the date that the warrant was executed.[14] The Defendant supports this argument by pointing to the fact that the only information linking the Defendant to the alleged illegal activity occurred on January 18, 2007, and the search warrant was not executed until May 6, 2008.[15]

Defendant relies on two Seventh Circuit cases[16] in support of his staleness argument. In *Newsom*, the Court found that in child pornography cases, information that is one year old is not stale.[17] However, the Defendant uses *Newsom* to support his argument by distinguishing it from the case at bar, in that the government had additional information of more recent evidence of criminal activity to support probable cause in *Newsom*, whereas there is no such recent evidence in Defendant's case to support probable cause.[18]

---

[12] Docket No. 18 at 5.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *See United States v. Newsom*, 402 F.3d 780, 783; *see also United States v. Prideaux-Wentz*, 543 F.3d 954, 954 (7th Cir. 2008).

[17] Docket No. 18 at 7.

[18] *Id.*

Similarly, the Defendant also relies on a Ninth Circuit case for support, [19] where a warrant was upheld because although there was a two-year period between original seizures and the execution of the warrant, there was more recent evidence that indicated that pornographic material was still in the possession of the Defendant. Additionally, the Defendant also cites a similar Third Circuit case [20] where a warrant was upheld although there was about a thirteen to fifteen-month period between evidence of the Defendant's possession of child pornography and the warrant's execution, because of additional evidence within two months of the warrant's execution. [21]

Defendant's second contention asserts that the search warrant was invalid for lack of particularity and lack of incorporation language. [22] In support for his argument, the Defendant cites a Supreme Court case where the Court held that a search conducted pursuant to a warrant was unconstitutional because the warrant failed to comport with the particularity requirement of the Fourth Amendment of the United States Constitution. [23] Additionally, the Defendant also supports this contention on the grounds that the Court, in *Groh*, concluded that the good faith exception rule would not be applicable because of its holding in

---

[19] *See United States v. Rabe*, 848 F.2d 994, 996 (9th Cir. 1988).

[20] *See United States v. Harvey*, 2 F.3d. 1318, 1322 (3rd Cir. 1993).

[21] Docket 18 at 7.

[22] *Id.* at 3.

[23] *Groh v. Ramirez*, 124 S.Ct. 1284, 1284 (2004); *see* U.S. Const. amend. IV.

*United States v. McGrew.*[24] The Defendant argues that the copy of the search warrant, in the case at bar, did not particularly describe the place to be searched or the things to be seized.[25] Specifically, the Defendant contends that the only reference to any "locations, person, or things," is to an attachment, not a reference to an affidavit, and that he did not receive a an application or supporting affidavit.[26] Along with that, the Defendant argues that the warrant did not have language of incorporation of an affidavit to cure these possible defects.[27] The Defendant also cites *McGrew* to support his contention that a facially invalid warrant is not cured by language of incorporation when the supporting affidavit is not presented at the time of search and seizure.[28]

In the case at bar, the Defendant claims that it would be erroneous for the Court to conclude that the Defendant was not deprived of the protections provided by the Fourth Amendment of the United States Constitution merely because an affidavit existed.[29] Additionally, the Defendant claims that because he did not receive the full warrant and its supporting documentation, he was not aware of the legality of the search, and the exact nature of the probable cause

---

[24] *United States v. McGrew*, 543 F.3d 954, 954 (7th Cir. 2008).

[25] Docket 18 at 5.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 6.

[29] *Id.* at 7.

supporting the warrant, or the property to be searched and seized.[30] Consequently, the Defendant claims that these actions deprived the Defendant of the opportunity to check on the agents' limits of authority while his residence was being searched, and that this enabled the agents to dictate their own limitations.[31]

## Particularity & Incorporation

Defendant also contends that the search warrant lacked particularity.[32] The Defendant's claim is without merit and mis-applies *Groh v. Ramirez.* Defendant states that the search warrant was not accompanied by the supporting affidavit and therefore he was unaware of the scope of the warrant. Defendant bases his argument on the language of *Groh* suggesting that the majority of the courts of appeals permit a general warrant to be cured by reference to a separate document only if both requirements—that words of incorporation be used that the incorporated document accompany the warrant—are met. The *Groh* court however, establishes no such rule.[33] Instead, the *Groh* court simply acknowledges the approach generally followed by the courts of appeals. In the case at hand, the Defendant was presented with a search warrant that specifically refers to "Attachment B" which is a seven page list of specific items to be seized in this

---

[30] *Id.* at 6.

[31] *Id.* at 7.

[32] *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2000).

[33] *Id.*

case.[34] Furthermore, even if the Defendant was presented the warrant without the attachments, some circuits have held that it is sufficient either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself.[35]

## Probable Cause

Probable cause is necessary to support the issuance of a valid search warrant.[36] Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity.[37] The test for determination of probable cause is whether the Magistrate Judge had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.[38] The Court also needs to exam the totality of the circumstances before determining probable cause.[39] Therefore, in determining the validity of the search warrant, this Court must " make a practical, commonsense decision as to whether, given all the circumstances set forth in the affidavit..., there is a fair probability that contraband or evidence of a crime will be found at a particular place."[40]

In this case, U.S. Immigration and Customs Enforcement (ICE) Special

---

[34] Docket No. 22, Exh. A at ¶1-20.

[35] *United States v. Hurwitz*, 459 F.3d 463, 471 (4th Cir. 2006); *see also United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988); *Baranski v. Fifteen Unknown ATF Agents*, 452 F.3d 433 (6th Cir. 2006).

[36] *United States v. Perez*, 484, F.3d 735, 640 (5th Cir. 2007).

[37] *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993).

[38] *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

[39] *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006).

[40] *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004).

Agent Robert C. Butler provided the Magistrate Judge a sworn affidavit.[41] The affidavit stated that in April 2006, ICE began Operation Flicker, investigating a website known as the "Home Collection."[42] The investigation revealed that this organization was responsible for numerous commercial child pornography websites.[43] Individuals would pay a subscription fee of approximately $79.95 or $99.95 a month to gain access to the restricted websites.[44] During their investigation, ICE agents determined that on January 18, 2007, the Defendant paid $99.95 to a PayPal account for Video Shop CD1, ID 1159.[45] ICE agents had already identified specific subject identifiers and Item IDs to certain child exploitation websites.[46] The subject identifier 1159 refers to a child exploitation member restricted website known as "Video Shop CD1."[47] ICE agents purchased access to this member restricted website on February 12, 2007 and March 19, 2007.[48] On these two occasions, the transaction was either identified by the subject identifier Video Shop CD1 or Item 1159.[49]

Special Agent Butler also stated that on May 18, 2007, a summons was

---

[41] Docket #22, Exh. A at ¶1-41.7.

[42] *Id.* at ¶19-20.

[43] *Id.*

[44] *Id.* at ¶20.

[45] *Id.* at ¶25.

[46] *Id.* at ¶26.

[47] *Id.*

[48] *Id.*

[49] *Id.*

prepared and served on Time Warner requesting subscriber information for the Defendant's identity and residence.[50] Time Warner confirmed that the Defendant was the subscriber and still had an active account. [51]

Special Agent Butler further stated that on August 23, 2007, a Federal Grand Jury Subpoena was prepared and served on Wells Fargo Bank Texas, N.A., the financial institution responsible for issuing the check/debit card (#xxxx74013491xxxx) [redacted] to checking account number xxx-xxxxxxx. [redacted][52] On April 30, 2008, the account number was verified as belonging to the Defendant.[53] The statement revealed that a check card purchase in the amount of $99.95 was debited by PayPal to Defendant's account.[54] There was no information provided by Wells Fargo Bank that there had been any evidence of suspected fraud, identify theft, unauthorized use, or wrongful charges related to he purchase in question.[55] A comparison of Webtrace records indicated that the Defendant purchased access to a child pornography website on January 18, 2007.[56]

Special Agent Butler opined in his affidavit inasmuch as Defendant

---

[50] *Id.* at ¶29.

[51] *Id.* at ¶29.1.

[52] *Id.* at ¶30.

[53] *Id.* at ¶30.1.

[54] *Id.*

[55] *Id.*

[56] *Id.* at ¶31.

purchased access to a website consisting of child pornography on January 18, 2007, ICE agents in another investigation titled Operation FALCON identified Defendant as possibly purchasing and accessing suspected child pornography website on April 26, 2003 and May 20, 2003.[57] The email account used to purchase access to the Operation FALCON website was the same account used to purchase access to the Video Shop CD1 website.[58] Defendant's current address was also identified by Operation Falcon at the time.[59] Based on Agent Butler's training and experience, he believes that the Defendant has a sexual interest in children and may be a collector of child pornography.[60] Agent Butler opined that child pornography collectors typically maintain their material for a prolonged period of time.[61] This hoarding behavior has been documented by law enforcement officers throughout the world.[62]

**Staleness**

Defendant argues that the information stated above by Special Agent Butler was "stale" and could not be relied upon to establish probable cause.[63] First, there is no established time limit on how old the information contained in

---

[57] *Id.* at ¶39.

[58] *Id.* at ¶40.1.

[59] *Id.*

[60] *Id.* at ¶41.

[61] *Id.*

[62] *Id.*

[63] Docket No. 18 at 7.

an affidavit may be.[64] Thus, determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant.[65] A reviewing court looks at the totality of the affidavit to determine if sufficient facts have been alleged to support probable cause for a warrant to be issued.[66] Given the complex nature of child pornography investigations, the evidence may take several months or years to accrue, and that evidence may consist of bits and pieces from camouflaged sources.[67]

Defendant states that 473 days had elapsed from when the illegal activity was discovered to the day the search warrant was issued, making the evidence stale. Although, the Fifth Circuit has held information that is six months old is not stale in the child pornography context, the Fifth Circuit has not appeared to directly address what the outer limits may be.[68] That is why courts must look at the totality of the circumstances when determining probable cause.[69] The age of inculpatory information is only one factor that magistrate judges should consider in determining whether probable cause exists. Staleness is to be determined on the facts of each case.[70] A finding of staleness or timeliness of information can

---

[64] *United States v. Watchter*, 961 S.W.2d 598, 600 (Tex. App.–San Antonio 1997, pet. denied).

[65] *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993).

[66] *Watchter,* 961 S.W.2d 598 at 600.

[67] *United States v. Winkler,* No. SA-07-CR-253-XR, 2008 WL 859197, at *20 (W.D. Tex. March 28, 2008).

[68] *See United States v. Streetman*, 207 F. App'x. 414, 416 (5th Cir. 2006).

[69] *United States v. Pierre*, 484 F.3d 75, 83 (1st Cir. 2007).

[70] *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984).

depend upon the nature of the unlawful activity, and when the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant.[71] Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned.[72] This Court, when faced with a motion to suppress evidence that was thirteen months old for staleness in *United States v. Winkler*, stated:

> Additionally, as evidenced by the expansive and intricate details of Operation Emissary, an investigation of child pornography involves a multitude of websites, companies, and individuals whose common goal is to elude detection. Given the complicated nature of a child pornography investigation, the evidence may take several months or years to accrue, and that evidence may consist of bits and pieces from several camouflaged sources.
>
> It would frustrate the Fourth Amendment's protection against unreasonable searches and seizures to force those tasked with investigating child pornography to hastily charge an individual based upon incomplete and uncorroborated information because of fear that a more complete investigation would consume too much time, rendering some information stale and unable to support a search warrant. In order to further the aim of the Fourth Amendment, it is better that the investigatory body be given a reasonable amount of time so that it may acquire as much corroborated information concerning the suspect and the alleged activity before taking the next step of entering his home or residence. Consequently, the Court refrains from stating that information that is, at

---

[71] *Id.*

[72] *United States v. Lacey,* 119 F.3d 742, 745 (9th Cir. 1997) (up holding a search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."); *see also United States v. Rabe*, 848 F.2d 994,997 (9th Cir. 1988); *United States v. Newsom*, 402 F.3d 780,783 (7th Cir. 2004).

most, thirteen months old is stale as a matter of law. To do so would be inconsistent with Fourth Amendment jurisprudence concerning staleness and probable cause to support a search warrant.[73]

In addition, information is less likely to be stale where the items sought in a search are of the type which could reasonably be expected to be kept in a particular location for long periods of time.[74] At least one circuit has found that computer files are of a type that could be expected to be kept for long periods of time in the place to be searched.[75] Evidence is also unlikely to be stale if it "clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have elapsed between the information and the issuance of the warrant."[76]

The Fifth Circuit, has on several occasions, endorsed the use of affidavits in which an officer testifies that users of child pornography tend to keep those images for long periods of time.[77] A number of other circuit courts have found that remote allegations of possession of child pornography are not stale, when they are accompanied by testimony that owners of pornography tend to collect and hold

---

[73] *Winkler,* 2008 WL 859197, at *20.

[74] *United States v. Greenlee*, 2005 U.S. Dist. LEXIS 15789, at *6 (N.D. Tex., Aug. 3, 2005) (finding probable cause when the affidavit indicated that defendant possessed child pornography between two to three years old).

[75] *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000).

[76] *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984).

[77] *Id.* at 8.

images for long periods of time.[78]

In the case at hand, the Defendant was first identified in April 26, 2003 of possibly purchasing child pornography during Operation FALCON.[79] The email account used to purchase access to the Operation FALCON website was the same account used to purchase access to the Video Shop CD1 website.[80] The Defendant's address was identified during this operation.[81] Although investigators did not pursue Defendant at that time, on January 18, 2007, the Defendant was identified again for purchasing child pornography and a search warrant was then issued.[82] The evidence showed that Defendant had the same email and address as in 2003 and his PayPal purchase of the Video Shop CD1.[83] In the case at hand, Agent Butler corroborated the evidence with his belief that the Defendant had a sexual interest in children and may be a collector of child pornography. Again, courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods

---

[78] *Rabe*, 848 F.2d at 997 (finding probable cause existed, based upon a two-month and two year old letter in which the defendant possessed child pornography); *United States v. Harvey*, 2 F.3d 1318, 1321 (3rd Cir. 1993) (finding probable cause existed based upon evidence the defendant had acquired numerous pornographic images between two and fifteen months before the search warrant was issued).

[79] Docket No. 22, Exh. A at ¶40-40.1.

[80] *Id.*

[81] *Id.*

[82] *Id.* at ¶29.

[83] *Id.* at ¶40.1.

of time in the place to be searched.[84] In this case, the affidavit provided by Special Agent Butler provided indicia of probable cause when he stated that persons involved in pornography and pedophilia tend to keep for long periods of time extensive pornography collections. This observation supports the conclusion that the more than a year gap between receipt of the information and issuance of the warrant is not excessive.[85]

Finally, there is a distinction between staleness in a child pornography case and one involving other illegal activities. This Court in *Winkler* distinguished cases involving drugs and other evanescent evidence with those involving child pornography stating that:

> [I]n cases involving drugs and other evidence which can easily disappear, it is of paramount importance that a search warrant be based upon information proximate to the application for the warrant to ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place. Drugs are generally acquired with the intent to sell or resell them in a short period of time, and there is a ready demand that can liquidate the supply. Child pornography, however, is not subject to easy and quick disposal, and is generally acquired with the intent of keeping it indefinitely. Consequently, the timeliness of information in support of probable cause for a search warrant for a crime relating to drugs and other evanescent items is different than the requisite timeliness of information in child pornography. The former must be based upon recent information to create a

---

[84] *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

[85] *See United States v. Rugh*, 968 F.2d 750, 750 (8th Cir. 1992) (search warrant was upheld even thought it was issued sixteen months after the suspect had sent his last letter indicating that child pornography would be present in his residence); *United States v. Koelling*, 992, F.2d 817, 817 (8th Cir. 1993) (search warrant was upheld because the officers reasonably could have believed the material...would still be present because pedophiles typically retain child pornography for a long time).

> fair probability that the evidence sought will be found; whereas the latter may be based upon more remote information because the information sought is generally maintained for longer periods of time. Because of this distinction, the age of the information relied upon in an affidavit in support of a search warrant for child pornography is less of a factor than in cases involving evanescent evidence.[86]

Inasmuch as the affidavit provided strong evidence that the Defendant purchased access to a child pornography web site, had previously sought to access a related web site, the information was corroborated, Special Agent Butler opined that Defendant had a sexual interest in children and is a collector of child pornography, and further opined that child pornography collectors typically retain their material for many years, the Court finds that the information was not stale and probable cause existed for the issuance of the search warrant. **C. Good Faith Exception**

Finally, the Court finds that even if the affidavit did not establish probable cause, the executing officers are entitled to the good faith exception set forth in *United States v. Leon*.[87] Under the good faith exception to the exclusionary rule, evidence is admissible if it is obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate.[88] Nothing was presented to the Court to indicate that any of the information contained in the affidavit was deliberately false or misleading. Defendant has not made any showing of bad faith by any law enforcement officer

---

[86] *Winkler,* No. SA-07-CR-253-XR, 2008 WL 859197, at *6-7.

[87] *United States v. Leon*, 468 U.S. 897, 927-28 (1984).

[88] *Id.*

connected to this case.

## Conclusion

Given both the structure of the child pornography market, and the nature of pornographic material involving children, the information relied upon in the instant case was not stale and was sufficient to provide probable cause to search Defendant's residence and office. A reasonable inference can be drawn that one who purchases a video from a child pornography website will take advantage of the contents that the video affords him. It can be reasonably inferred that one suspected of viewing child pornography will maintain an archive of his illicit material.

Furthermore, a strict requirement that investigators of suspected child pornography infractions be completed within a shortened period of time would frustrate the protections of the Fourth Amendment. Lastly, child pornography is not the type of evanescent evidence that is susceptible to being disposed of within a short period of time, so timeliness of information in support of a search warrant is a lesser factor in the Court's probable cause analysis than in other cases. Further, the ICE agents relied in good faith on the Magistrate Judge's probable cause determination.

Defendant's Motion to Suppress (Docket No.18) is **DENIED**.
It is so ORDERED.

SIGNED this 8th day of June, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE